20821. LOUISVILLE & NASHVILLE RAILROAD CO. *et al.* v. EDWARDS, administratrix.

DECIDED APRIL 14, 1931.

*Cumming & Harper, Callaway & Howard, W. Inman Curry,* for plaintiff in error.

*Pierce Brothers, Hammond & Kennedy,* contra.

LUKE, J. Itie (Mrs. W. L.) Edwards, administratrix of W. Lamar Edwards, brought an action in the superior court of Columbia county, for the benefit of herself as widow of W. Lamar Edwards and their two minor children, William Thomas Edwards and Robin Lamar Edwards, against Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company, to recover damages for the homicide of W. Lamar Edwards.

It appears from the record that the death of Edwards occurred while he was in the employ of the defendant companies, in the performance of his duty as flagman on a freight-train, operating between Atlanta and Augusta, upon the railway of the Georgia Railroad and Banking Company, of which the defendant companies are

co-lessees; that the defendant companies are common carriers, engaged in interstate commerce, and that the train in connection with the operation of which the employee lost his life was being used at the time in interstate commerce, and therefore was subject to the provisions of what is usually termed the Federal safety appliance act, and to the rules and regulations prescribed by the interstate-commerce commission by authority thereof. The plaintiff's petition alleges, with considerable heed to details, that the freight-car which the employee mounted had, as a part of its equipment, a hand-brake, with which he was required to control the speed and movement of the car; that this hand-brake was defective in several particulars; that it was out of repair; that it was absolutely unfit for ordinary use; and that at the time of the fatality it was being used carelessly and negligently by the defendant companies, in violation of the act of Congress and the rules and regulations of the interstate-commerce commission; and that the alleged defects moved in combination with each other when the hand-brake was applied and directly caused the homicide. The defendant companies denied both the alleged negligence and the defective condition of the hand-brake and its appliances.

The trial of the case resulted in a verdict and judgment against the defendant companies for $20,000. They except to the denial of their motion for a new trial.

■ The first assignment of error is based upon the refusal to grant a continuance of the case upon the motion of the defendant companies on the ground of the absence of one Quinn, a material witness; the contention being that the court abused its judicial discretion in the premises. It is urged by the defendants that the absence of the witness was due solely to providential cause. Affidavits and oral testimony were presented to show that the witness was under treatment in a hospital in Atlanta for "anaemia and nervous breakdown;" that a notice to attend the trial had been sent to him several weeks beforehand, and that a belated effort was made to serve him with a subpoena. Other facts, which were intended to meet the requirements of the law, were also shown. It appears that the case was called for trial on the first day of the term, Monday, and that the witness was observed at work in the preceding week, "probably Tuesday or Wednesday," and that "he appeared to be in the same general health that he was always." The at-

tending physician stated in an affidavit that "the condition of said Quinn (the absent witness) is such that he will be confined to the hospital for some time, probably several weeks, and will not be in such condition as to attend court during the week beginning Monday, March 24, 1930." A witness testified that he saw Quinn on the preceding Sunday, and "when I saw Mr. Quinn at the hospital he looked very nervous and complained of his knees aching,—said he could hardly stand on his feet at all." But there was nothing shown to indicate that the condition of the absent witness made it necessary or advisable to confine himself to bed, or that he was suffering from any ailment of an acute nature, or that his condition of health would probably be aggravated by his attendance as a witness upon the trial of the case, or that his attendance would involve anything more serious than the matter of his convenience. Nor was there any showing that his condition had become suddenly or rapidly or substantially worse after he was seen at work in the preceding week. It appeared also from the evidence adduced that those identical facts in issue which were within the knowledge of the absent witness were likewise within the knowledge of at least two other witnesses present in court on behalf of the defendant companies. The case involved an inquiry that was nontechnical in its character: the question being merely whether certain alleged patent defects in a hand-brake actually existed at the time of the accident, and whether these defects proximately caused the homicide. As one of the defendants' witnesses stated: "Everybody sought to find out how the accident happened. That was my purpose in going. There isn't anything peculiar about it. It is something that shows on its face, if it exists." It is urged that because Quinn was a skilled mechanic whose duties required him to make frequent and regular inspections of the freight-cars and their appliances, his testimony was most important and material to the proper presentation of the defendants' side of the controversy; but as it demanded no expert knowledge or skill to discover and describe the alleged defects, it would not appear, in the circumstances, that there were any facts within the peculiar knowledge of the witness that could not be shown by the testimony of the two other witnesses who testified that they made an inspection of the hand-brake immediately following the accident.

Can this court say, upon such a showing, that the trial judge

170

abused his discretion in denying the defendants' motion for a continuance of the cause?  The rule is, of course, that for refusal of a continuance to constitute reversible error, an abuse of such discretion must be clearly manifest.  Even though the judge, with somewhat greater propriety, might have finally adopted the view urged by the moving parties, this would not warrant interference by this court, upon review, with the exercise of the discretionary power conferred upon him.  Certainly we are by no means persuaded that a different verdict would probably have resulted had the testimony of the absent witness been available to the defendants.  So, without reference to the question whether or not due diligence was exercised on behalf of the defendants to secure the attendance of the witness by the timely service of a subpœna,—as to which question there is considerable doubt in our minds,—we are of the opinion that the first assignment of error is wholly without merit. It may also be noted in this connection that, so far as Quinn's affidavit of May 8, 1930, is concerned, we see no reason to modify the views expressed by this court in the case of *Goffe* v. *State,* 14 *Ga. App.* 275 (80 S. E. 519).

■  The second assignment of error relates to the admission over objection of the defendants of the testimony of one Richards as to the condition of the alleged defective brake about a year after the injury in question, it being objected to as irrelevant, because it could not tend to show the condition of the brake when the injury occurred.  We are not aware of any rule of evidence under which such testimony as was offered by this witness, in the situation here presented, is required to be withheld from the jury.  The four photographs, taken many months after the accident, were introduced without objection.  There was testimony to the effect that the condition of the hand-brake as shown in the photographs was the same as that which existed at the time of the accident and at the time of Richards' inspection.  With a foundation thus laid, we see no valid objection to the introduction of Richards' evidence minutely describing the condition of the hand-brake at the time of his inspection.  If, as is urged by counsel, he "undertakes to claim credence for his testimony by what is shown by the photograph taken long after the homicide," surely that was a matter for the consideration of the jury, and not of the court, in the circumstances appearing here.  It does not appear that there is any real substance

in the assignment of error in this connection. We therefore hold that no error was committed in permitting the testimony to go to the jury over the defendants' objection.

The third assignment of error is based upon the denial by the court of the defendants' motion to exclude the testimony of Miriam Mack (an eleven-year-old negro girl), on the ground of her alleged incompetency. It is urged that this witness was lacking in both mental and moral capacity to testify; but the record discloses that the trial judge was both careful and thorough in the conduct of the preliminary investigation as to the competency of the witness in the particulars mentioned; and the testimony of the witness on its face suggests to us no sufficient reason to say that the plaintiff was not entitled to the benefit of her account of the accident. Besides this, the trial judge heard and observed the witness and must be presumed to be better able than this court to determine the question of her competency. We perceive no good reason to disturb this judgment on that score.

■ The fourth assignment of error—that the court refused to set aside the verdict and to grant a new trial on the ground that the verdict is excessive— is not discussed in the briefs for the defendants, and therefore is not here considered.

■ The fifth assignment challenges the sufficiency of the evidence to sustain the verdict and judgment. The undisputed facts, among others, were that the husband of the petitioner, acting in the discharge of his duties, mounted a certain freight-car for the purpose of applying the hand-brake, to the end that that car and another one attached to it might be brought to a stop on a side-track; and that his mutilated body was found on the railway-track immediately afterwards with the brake-stick still grasped in one of his hands. It appeared that the victim of the accident had been diligent, careful, strong, and in robust health. The evidence of the witness whose competency was challenged was to the effect, if we correctly interpret it, that the petitioner's husband was engaged in the very act of applying the hand-brake when he fell down under the car and was killed. The only disputed facts are those relating to the defective condition of the hand-brake and its appliances. The plaintiff produced witnesses who testified positively that certain defects in the apparatus existed at the time of the accident, and the defendants produced witnesses who testified that such defects

did not exist at that time. The testimony adduced on behalf of the plaintiff, if standing alone, was sufficient, in our judgment, to warrant a belief in the mind of the jury that such defects had a harmful effect upon the operation of the hand-brake; that its operation in that condition involved serious danger to any one attempting to apply the brake in the usual manner; and that these defects existed by reason of the defendants' negligence, and proximately caused the homicide. In such circumstances we are unable to concur in the view of the defendants' counsel that the verdict rests upon a mere scintilla of evidence. In our view the finding of the jury upon the facts as shown is not to be deemed a merely speculative conclusion; but we think that where inferences were resorted to in order to reach their conclusion, those inferences can not be said to be unreasonable, unnatural, or unwarranted.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*